UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DUDGEON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SONOMA, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-05615-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 23 |

Plaintiff Daniel Dudgeon ("Plaintiff") filed this suit against Defendants County of Sonoma, Robert Woodworth, Brent Kidder, Kensell Williams, Matthias Williams, Randy Williams, and George Minaglia (collectively, "Defendants") alleging violations of his civil rights under 42 U.S.C. § 1983, violation of his civil rights under California Civil Code § 52.1, false arrest, battery, assault, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and a Monell claim. Plaintiff also named Defendant City of Sonoma in the complaint but voluntarily dismissed this defendant. Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds the motion suitable for resolution without oral argument and vacates the motion hearing set for February 14, 2020. Having considered the papers filed in support of and in opposition to the motions, the Court hereby GRANTS in part and DENIES in part the motion to dismiss the complaint and grants Plaintiff leave to amend.

## I.　FACTUAL BACKGROUND

On or about January 22, 2019, Plaintiff was attempting to detox from his opiate addiction and started consuming a 750 ml bottle of Vodka. Compl. ¶ 21-23. Plaintiff's wife noticed that Plaintiff's body was experiencing serve muscle spams and limb twitching. Id. ¶ 24. Around 10

pm, Plaintiff's wife retired to their bedroom with their 12-year-old daughter. Id. ¶¶ 20, 25. Plaintiff's wife noticed that the vodka bottle was still half full. Id. ¶ 25. While in bed, Plaintiff's wife could hear Plaintiff walking around their home and having a conversation with himself. Id. ¶ 26. Around 12 [a]m, Plaintiff's wife exited the bedroom to tell Plaintiff he needed to lay down because he was making too much noise. Id. ¶ 27. At this time, she noticed that the vodka bottle was completely empty. Id. Plaintiff's wife brought their 8-year-old son to their bedroom and locked the door because Plaintiff was heavily intoxicated. Id. ¶ 28. Around 3 am, Plaintiff attempted to enter the locked bedroom with the front door key and Plaintiff's wife told him that he needed to lay down on the couch or she would call the hospital. Id. ¶¶ 29-31. Plaintiff's wife called the hospital but the hospital said they could not assist Plaintiff until he was physically present and suggested Plaintiff's wife call 911 if she was unable to bring him. Id. ¶ 32. Around 3:38 am, Plaintiff's wife called 911 requesting paramedic assistance because she was concerned that Plaintiff was having a stroke. Id. ¶ 33. While Plaintiff's wife was on the phone with 911, Plaintiff continued to request to enter the bedroom and the 911 operator asked Plaintiff's wife to confirm that she was safe. Id. ¶¶ 34-35. She was adamant that she was safe but while she was on the phone with the 911 operator, Plaintiff forcefully entered the room. Id. ¶¶ 35-36.

Plaintiff's wife had previously opened the front door of the home leaving only the transparent screen door closed in anticipation of paramedics. Id. ¶ 37. Defendant Woodworth, a Sonoma County deputy sheriff, responded to the 911 call and announced his presence by yelling "Sheriff's Office!" Id. ¶¶ 38-39. Plaintiff was dancing and told the officer, "Come inside. You're in my house. What do you need?" Id. ¶ 42. Plaintiff alleges that at no point did he assume a fighting stance, clench his fist, or act in a threatening manner. Id. ¶ 44. Plaintiff began walking towards his wife when Defendant Woodworth inserted himself between Plaintiff and Plaintiff's wife, instructed Plaintiff to stay away from Plaintiff's wife, and placed his hands onto Plaintiff. Id. ¶¶ 45-46. Plaintiff became defensive and asked Defendant Woodworth if he was really going to come between him and his wife. Id. ¶¶ 47-49. Defendant Woodworth grabbed Plaintiff's arm and Plaintiff resisted. Id. ¶¶ 50-51. A struggle ensued and Defendant Woodworth allegedly wrestled Plaintiff to the ground and struck Plaintiff in the face "to quickly and effectively place

Daniel in handcuffs and stop and further violence." Id. ¶¶ 52-53. While Defendant Woodworth was attempting to handcuff Plaintiff, Defendant Woodworth placed his shin on the back of Plaintiff's head allegedly causing further injury. Id., ¶ 56. No other officers were present during the confrontation. Id. ¶ 57. After Plaintiff was detained, Defendant Minaglia and one of the defendants with the last name Williams arrived on scene to assist Defendant Woodworth. Id. ¶ 58. Approximately three officers physically carried Plaintiff out of his home. Id. ¶ 61. At some point during the struggle, or during his subsequent arrest and questioning, Plaintiff sustained severe injury to his collar bone and shoulder. Id. ¶ 62. Plaintiff does not recall any of the interactions between him and the Sheriff's deputies and only remembers coming to in the hospital handcuffed to the hospital bed. Id. ¶ 63. Plaintiff alleges that the assault and battery within his home, and the subsequent violent removal of Plaintiff left him with severe injuries. Id. ¶ 64.

## II. PROCEDURAL HISTORY

On September 05, 2019, Plaintiff filed this complaint. On January 7, 2020, Defendants filed this motion to dismiss. On January 17, 2020, Plaintiff voluntarily dismissed Defendant City of Sonoma.

## III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations omitted).

A claim for relief may be dismissed under FRCP 12(b)(6) for a "failure to state a claim upon which relief can be granted." See Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

3

(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citing Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

**IV. DISCUSSION**

**A. Plaintiff's First Claim, Second Claim, and Third Claim for Violation of 42 U.S.C. §1983 Against the County of Sonoma Fails to State a Claim.**

"A local governmental entity may be sued under section 1983 where the alleged constitutional deprivation was inflicted pursuant to an official policy or custom." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). However, a local government entity cannot be sued under §1983 for an injury inflicted solely by its employees or agents under a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). A government entity is liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

In order to establish liability for governmental entities under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.1997)

(internal quotation marks and citation omitted; alterations in original); see also Lee v. City of Los Angeles, 250 F.3d 668, 681-682 (9th Cir. 2001), abrogated on other grounds by Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Municipal liability for a constitutional violation "only attaches where (1) the alleged constitutional tort resulted from a municipality's custom, policy, or practice; (2) the tortfeasor was an official 'whose acts fairly represent official policy such that the challenged action constituted official policy'; (3) an official with policymaking authority ratified the tortfeasor's actions; or (4) the municipality failed to adequately train the tortfeasors." Inmam v. Anderson, 294 F. Supp. 3d 907, 921 (N.D. Cal. 2018) (citations omitted).

Bare allegations that some unidentified policy, practice, or custom exists fail to state a claim. AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012); see also Gonzalez v. Cnty. of Merced, 289 F. Supp. 3d 1094, 1116 (E.D. Cal. 2017) (where allegations identified only two or three incidents, facts alleged were insufficient to allege a widespread practice of repeated constitutional violations sufficient to state a Monell claim). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 2008). An "isolated instance . . . is insufficient evidence of a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the County." Marsh v. County of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) (internal citations omitted). Likewise, mistakes or errors of municipal officials do not rise to the level of "policy" sufficient for §1983 liability. Erdman v. Cochise County, Arizona, 926 F.2d 877, 882 (9th Cir. 1991).

In the complaint, Plaintiff merely alleges that Defendant County of Sonoma had a duty to adequately train, supervise and discipline their deputy officers in order to protect members of the public and incarcerated individuals from being harmed by sheriff deputies unnecessarily and Defendant County of Sonoma was deliberately indifferent to such duties and thereby proximately caused injury to Plaintiff. Compl. ¶ 78-79. While these allegations mimic the legal standard, Plaintiff failed to identify or allege a specific County custom, policy, or practice that was the moving force behind the purported constitutional violations. Moreover, there are no supporting

facts alleging any particular instances of notice or a pattern of conduct. Plaintiff also fails to allege that the purported tortfeasor was an official whose acts fairly represent official policy or that training was inadequate. Despite Plaintiff's argument to the contrary, bare allegations are not enough to form the basis of Plaintiff's Monell claim. See Turano v. Cty. of Alameda, No. 17-CV-06953-KAW, 2018 WL 3054853, at *10 (N.D. Cal. June 20, 2018); Gardner v. Las Vegas Metro. Police Dep't, No. 216CV01384GMNCWH, 2018 WL 1091977, at *3 (D. Nev. Feb. 28, 2018). Furthermore, although Plaintiff attempts to provide the Court with additional facts in his opposition, these facts are not pled in the complaint. Thus, Plaintiff's Monell claim is dismissed with leave to amend.

### B. Plaintiff's First Claim Alleging Violation of the Fourteenth Amendment Fails to State a Claim.

Defendants argue that Plaintiff's first claim should be dismissed because it improperly alleges both a violation of the Fourth and Fourteenth Amendment but only the Fourth Amendment is an appropriate source for constitutional protections for this incident. The Supreme Court has held that "all claims that law enforcement officials used excessive force in the course of an arrest, investigatory stop, or other seizure of a free person must be brought under the Fourth Amendment and analyzed under its objective reasonableness standard, rather than under a substantive due process approach." Nguthe yen v. Ponce, 2012 WL 1247165, at *15-16 (C.D. Cal. March 7, 2012) citing Graham v. Connor, 490 U.S. 386, 395 (1989) and County of Sacramento v. Lewis, 523 U.S. 833, 8442 (1998). Furthermore, the Ninth Circuit has held that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." Pierce v. Multnomah Cty., Or., 76 F.3d 1032, 1043 (9th Cir. 1996). A court in this district has held that a "plaintiff may not bring a Fourteenth Amendment claim because the Fourth Amendment applies to defendants' use of force." Wroth v. Cty. of Sonoma, No. 14-CV-05519-SI, 2015 WL 3903023, at *2 (N.D. Cal. June 24, 2015) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994) for the proposition, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government

behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"). However, an excessive force claim may arise under the Due Process Clause of the Fourteenth Amendment when there is no search or seizure. Cty. of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998).

Here, Plaintiff alleges that there was a violation of his Fourth Amendment rights because he was struck in the face, handcuffed, and then violently removed from his home. Compl. ¶¶ 56, 58, 64. Plaintiff further alleges that "[a]t some point during the struggle with WOODWORTH, or during his subsequent arrest and questioning, PLAINTIFF sustained severe injury to his collar bone and shoulder." Id. ¶ 62. Although Plaintiff alleges that he may have sustained severe injury after his arrest, the Fourth Amendment sets the applicable constitutional limitations because Plaintiff has not alleged that he sustained these allege injuries after he was released or found to be legally in custody based upon probable cause for arrest. Plaintiff's First Claim is dismissed to the extent that he alleges violations of the Fourteenth Amendment.

### C. Plaintiff Seeks to Withdraw His Second Claim.

Plaintiff seeks to withdraw his second claim for violation of the Eighth Amendment. The Court dismisses Plaintiff's second claim.

### D. Plaintiff's Complaint Fails to State a Claim Against Defendants Kidder, Kensell Williams, Matthias Williams, and Randy Williams but States a Viable Claim Against Defendant Minaglia and the involved Williams Defendant.

#### 1. Defendant Kidder

Plaintiff merely alleges that Defendant Kidder "was an employee of the COUNTY and a contracted agent of the CITY, and it is believed, that he was employed as a Deputy Sheriff at the time of the incident. PLAINTIFF believes that Mr. KIDDER is legally responsible and liable for the incident, injuries and damages herein set forth. Mr. KIDDER proximately caused injuries and damages because of his intentional and/or negligent actions, breach of duty, violation of public policy and/or use of excessive force. Mr. KIDDER is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act of omission." Compl. ¶ 13. In his sixth and eighth claims, Plaintiff alleges that Defendant Kidder,

along with the other deputy sheriffs (including the three deputies named Williams), "perpetrated a vicious physical attack on PLAINTIFF, and battered him by forcefully striking his face, forcing his injured face into the ground, and then injuring him further during the removal from his home and during transportation to the hospital." Compl. ¶ 90. However, in his statement of facts, Plaintiff never alleged that Defendant Kidder was at the scene of the incident.

In Plaintiff's opposition, Plaintiff states that Defendant Kidder was the supervising officer whose name appears on the incident report where "Defendant Sonoma County's agents fraudulently misrepresent what occurred, stating in the report that '[d]uring a Domestic Violence Investigation the male half was arrested for resisting arrest.'" Opp. at 16. Plaintiff states in his opposition that the deputy sheriffs fabricated a domestic violence investigation and Defendant Kidder falsely charged Plaintiff with resisting arrest in order to keep him quiet about the attack. Opp. at 16-17. None of these facts are alleged in the complaint. Thus, Defendants' motion to dismiss is granted as to Defendant Kidder with leave to amend.

### 2. Kensell Williams, Matthias Williams, and Randy Williams

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Furthermore, for a section 1983 claim, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Here, Plaintiff fails to allege specific facts regarding the individual defendants with the last name of Williams. Instead, Plaintiff named all deputies with the last name of Williams in his complaint and alleges that one of the defendants with the last name of Williams arrived on scene. Compl. ¶ 58. Although the County Counsel advised Plaintiff's counsel which Williams defendant arrived at the scene, Plaintiff refuses to dismiss the other two Williams defendants. Plaintiff's claim does not have facial plausibility because Plaintiff has not plead factual content that allows the Court to draw the reasonable inference that each defendant with the last name of Williams is liable for the alleged misconduct when only one Williams defendant was involved. Thus, Defendants' motion to dismiss is granted as to Kensell Williams, Matthias Williams, and Randy

8

Williams with leave to amend.

### 3. Defendant George Minaglia and the Involved Williams Defendant

Defendants allege that Plaintiff has failed to "alleged in what manner each defendant carried Plaintiff out of the home, whether or how the physical contact was allegedly unreasonable, or whether Plaintiff sustained any additional injuries while being carried out and if so, which of the individual defendants are liable for any purported injuries." Mot. At 16. However, Plaintiff alleges that after he was handcuffed, he was physically carried from his home by three officers, presumably Defendants Woodworth, Minaglia, and Williams whom Plaintiff alleges were at the scene. Compl. ¶¶ 56, 58, 61, 64. Plaintiff also alleges that "[a]t some point during the struggle with WOODWORTH, or during his subsequent arrest and questioning, PLAINTIFF sustained severe injury to his collar bone and shoulder." Id. ¶ 62. Plaintiff further alleges that, " [t]he assault and battery within his home, and the subsequent violent removal of PLAINTIFF from his home, left PLAINTIFF with severe injuries to his right brow ridge, right cheek bone, collar bone, shoulders, and extremities, including an orbital fracture to his right eye socket, permanent vision impairment, and severe mental illness." Id. ¶ 64. Plaintiff has alleged that the physical removal by the three officers was violent, although Plaintiff was already handcuffed, and that Plaintiff sustained specific injuries during the incident.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,'" Iqbal, 556 U.S. at 678. Therefore, Defendants' argument that the complaint does not allege "which defendant touched Plaintiff, in what manner, or how the physical conduct caused his purported injuries" is unpersuasive. Likewise, the Court is not persuaded by Defendants' argument that Plaintiff's complaint is too speculative because the injury could have happened during the struggle with Defendant Woodworth or during the subsequent arrest and questioning. Although Plaintiff did not specify the exact moment he suffered each injury, Plaintiff has adequately alleged facts that would support a plausible claim against Defendant Minaglia and the involved Williams defendant when he alleged that the subsequent violent removal left him with severe injuries. Defendants' motion to dismiss is denied as to Defendant Minaglia and the involved Williams

defendant.[1]

### E. Plaintiff Seeks Leave to Amended to Include Specific Statutory Exceptions to Immunity.

Defendants argue that Plaintiff's state law claims against the County of Sonoma are not viable because Plaintiff has not identified a statutory duty upon which the County can be liable. In his opposition, Plaintiff seeks leave to amend the complaint to specifically allege violations of §§ 820 and 815.2 of the California Government Code. The Court grants Plaintiff leave to amend.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The amended complaint must be filed within 28 days of the date this order is filed and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the original complaint, Plaintiff must include in it all the claims he wishes to present. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the original complaint by reference. Failure to amend within the designated time may result in the dismissal of this case.

**IT IS SO ORDERED.**

Dated: February 11, 2020

JOSEPH C. SPERO
United States Magistrate Judge

---

[1] Although all three defendants with the last name of Williams are dismissed with leave to amend in section IV(D)(2) above, presumably Plaintiff will amend to include allegations specifically identifying which Williams defendant was actually involved on the scene.